## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANE BELLARD** | **CIVIL ACTION NO. 08-627** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **SID J. GAUTREAUX, III** | **MAGISTRATE JUDGE KIRK** |

### MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Sheriff Sid J. Gautreaux, III ("Defendant" or "Sheriff") urging dismissal of all claims against him by plaintiff in the above captioned suit.[1]  For the reasons expressed below, the court finds that defendant's motion should be **GRANTED** in part and **DENIED** in part.

I.      **BACKGROUND**

    A.      **Relevant Facts**

The events giving rise to this suit began in January of 2008.  Plaintiff Shane Bellard ("Plaintiff") was employed by the East Baton Rouge Sheriff's Department as a Deputy Sheriff and became enrolled as a cadet in the Capital Area Regional Training Academy ("CARTA").[2]  Captain Paul Venable was the Director of Training and the head of CARTA at the time plaintiff was a cadet.[3] Testimony by plaintiff and Venable reveals that plaintiff was not a model cadet during his first few weeks at CARTA.  Specifically, plaintiff admits that he was tardy for class several times and "dozed

---

[1]R. 20.

[2]Deposition of Shane Bellard [R. 21-8] at 9:17-22.

[3]Id. at 9:23-25.

1

off" in class at least once.[4]  Plaintiff also admits that he was sent home from the firing range on one

occasion after instructors noticed that he was visibly impaired.[5]  Plaintiff admits that, on that

occasion, he slept very little the night before and had taken the prescription sleep aid Ambien.

Plaintiff also admits that he brought unauthorized items, including a vehicle tracking device, into the

academy.[6]  Plaintiff was sent to Human Resources ("HR") on or about January 22, 2008 as a result

of these various infractions, where he met with Captain Brouillette.[7]

On or about January 24, 2008, it is alleged that plaintiff was asked by Carla Coburn

("Coburn"), a fellow cadet, what he was eating during his lunch break.  It is further alleged that

plaintiff replied that he was eating a military meal ready-to-eat or "M.R.E."  When plaintiff was

asked why he was eating an M.R.E., it is alleged that he stated that he was eating the M.R.E. because

"it makes you hard" and raised his right arm to Coburn.  Thereafter, Coburn and another female

cadet, Holly Thompson ("Thompson"), who also heard plaintiff's statement to Coburn and saw his

arm gesture reported the incident to Venable's assistant, Pauline Carter ("Carter"), who in turn

informed Venable.[8]  Although plaintiff admits that he spoke those words and raised his arm to flex

his arm muscles, he denies that he intended a sexual reference.[9]  Testimony from Coburn and

Thompson indicates that they perceived his comments and gestures as conveying a sexual reference

---

[4]Id. at 10:14-18, 11:2-7.

[5]Id. at 11:13-12:5.

[6]Id. at 15:17 - 16:1.

[7]Deposition of Paul Venable [R. 21-1] at 19:13 - 20:12.

[8]Id. at 28:17-2.

[9]Deposition of Shane Bellard [R. 21-8] at 20:10-15; 23:21 - 25:15.

2

to plaintiff's genitalia.[10]

Upon hearing of the incident from Carter, Venable asked Coburn and Thompson to prepare written statements detailing their experience, which he faxed to the Internal Affairs Division.[11]  In addition to detailing plaintiff's comments of January 24th, the statements authored by Coburn and Thompson also allege that plaintiff previously made them feel uncomfortable by asking them suggestive questions, insinuating that he knew they were alone in their homes frequently and commenting on how nice he thought they looked in their uniforms.[12]

Based on the statements from Coburn and Thompson, Venable instructed plaintiff to report to HR a second time.  Plaintiff complied and, upon arriving at HR, was interviewed by both Danny McAllister and Captain Brouillette.  Plaintiff says that McAllister and Brouillette asked him whether or not he told Coburn that M.R.E.s arouse him sexually.[13]  Plaintiff denied making that statement.[14]  Plaintiff recalls that he was also asked whether or not he was having an affair, which he also denied.[15]

After being interviewed, plaintiff was issued a letter of termination from the East Baton Rouge Sheriff's Office explaining that

---

[10]Deposition of Coburn at 27:9 - 31:4 (referring to Coburn's written statement of 1/24/08, attached as Exhibit 1 to Deposition of Venable); Deposition of Thompson at 58:10 - 60:25.

[11]Id.

[12]Exhibits 1 and 2 to Deposition of Venable [R. 21-1].

[13]Deposition of Bellard [R. 21-8] at 20:10-15.

[14]Id.

[15]Id. at 21:3-6.

[e]ffective immediately, your employment with the East Baton
Rouge Sheriff's Office is terminated for violation of Office Policy
& Procedure titled: Code of Conduct Sec III – Titled Conduct
Unbecoming, Part F - Paragraph I - Conduct Unbecoming in general
(level 1 – 3); Part R - Sexual Harassment (level 2 – 3).[16]

Thereafter, plaintiff informed his father, Dennis Bellard, a former Baton Rouge Police

Officer, of his termination on the basis of sexual harassment and of the specific allegations against

him by Coburn and Thompson.[17] Plaintiff also contacted Mike Knaps ("Knaps"), the Chief of Police

in Baker, Louisiana, and informed him of his termination based on sexual harassment and his

tardiness.[18] Plaintiff asked Knaps, a family relation, to speak to the Sheriff on his behalf concerning

the termination.[19]  Knaps spoke to the Sheriff and requested, on plaintiff's behalf, that plaintiff be

allowed to resign, rather than be fired.[20]  The Sheriff agreed and made a limited time offer for

plaintiff to resign.[21] Plaintiff rejected that offer by failing to submit his resignation, telling his father

that he would prefer to pursue a civil action against the Sheriff.[22]

Plaintiff's father contacted Mike Knaps about plaintiff's situation on or about February 5,

---

[16]Letter of termination dated January 24, 2008 marked as "Exhibit 2" to deposition of
Shane Bellard [R. 21-8].

[17]Deposition of Dennis Bellard [R. 21-5] at 13:7 - 14:11.

[18]Deposition of Mike Knaps [R. 21-4] at 7:1 - 9:1.

[19]Deposition of Shane Bellard [R. 21-8] at 41:11 - 42:15.

[20]Deposition of Mike Knaps [R. 21-4] at 42:6 - 45:7.

[21]Id.

[22]Deposition of Dennis Bellard [R. 21-5] at 60:21-4.

4

2008 at 8:30 p.m. and, without Knaps' permission, recorded the conversation.[23]  Plaintiff's father also contacted the Sheriff concerning plaintiff's situation on or about February 26, 2008 and, without the Sheriff's permission, recorded the conversation.[24]

Plaintiff asserts that he contacted Baton Rouge Chief of Police Jeff LeDuff and, during that conversation, Chief LeDuff told plaintiff that he had already been made aware of plaintiff's termination by the Sheriff himself.[25]

By letter dated July 24, 2008, counsel for plaintiff contacted counsel for defendant and formally requested "an opportunity [for plaintiff] to prove his innocence on the charges for which he was fired and clear his name."[26]  Counsel for defendant replied in writing by letter dated July 25, 2008, denying plaintiff's request on the basis of his status as an at-will employee under Louisiana law.[27]  Plaintiff filed suit in the Middle District Court on October 30, 2008.[28]

―――――――――――――――――――

[23]A copy of the recording of that conversation is attached as Exhibit 2 to the deposition of Dennis Bellard [R. 21-5].

[24]A copy of the recording of that conversation is attached as Exhibit 1 to the deposition of Dennis Bellard [R. 21-5].

[25]Deposition of Shane Bellard [R. 21-8] at 48:16 - 49:1.

[26]Exhibit 3 to Deposition of Shane Bellard [R. 21-8].

[27]Exhibit 5 to Deposition of Sid Gautreaux [R. 21-3].  The court notes that plaintiff's status as an at-will employee under Louisiana law is not determinative of whether or not plaintiff is entitled to a name clearing hearing. Campos v. Guillot, 743 F.2d 1123 (5th Cir. 1984); Amedee v. Litchfield, 673 F.Supp. 783 (M.D. La. 1987). While plaintiff does not possess, and does not assert, a property interest in employment as a Deputy Sheriff, plaintiff does have a liberty interest in his reputation as we will discuss below.  Furthermore, it is well established that dismissal of an at-will employee for a specific cause may give rise to federal and state law claims if the stated cause constitutes an "impermissible reason" under law and jurisprudence. See, e.g., Fadeyi v. Planned Parenthood Ass'n. of Lubbock, Inc., 160 F.3d 1048 (5th Cir. 1998); Pease v. Pakhoed Corp., 980 F.2d 995 (5th Cir. 1993); Savoie v. Labove, 692 So.2d 626, 629 (La. App. 3 Cir. 1997).  An employee's at-will status is no protection when a cause, such as an allegation of

Plaintiff asserts claims under 42 U.S.C. § 1983 against the Sheriff in both his individual and official capacities for violation of his federal and state due process rights.[29]  Specifically, plaintiff asserts that he was deprived of his liberty interest under the Louisiana and federal constitutions when he was denied a name clearing hearing after being discharged from employment by the Sheriff.[30]

Plaintiff also asserts Louisiana law defamation claims against the Sheriff in his individual and official capacities, alleging that the Sheriff orally published sexual harassment allegations against plaintiff to persons outside of the Sheriff's Office, including Chief Jeff LeDuff, plaintiff's father Dennis Bellard and Chief Mike Knaps of the Baker Police Department.[31]  Plaintiff alleges that these allegations are defamatory per se.[32]  For reasons discussed below, the court agrees.

Plaintiff seeks redress in the form of declaratory and injunctive relief, compensatory and punitive damages, as well as reinstatement to his employment with the Sheriff's Office.[33]  Additionally, plaintiff requests an award of reasonable attorney fees, litigation expenses, costs and interest thereon until satisfaction of judgment.[34]

---

sexual harassment, is offered for the employer's decision to terminate the employee. Accordingly, if plaintiff is able to demonstrate certain facts giving rise to his right to a name clearing hearing, defendant's reason for denial of the hearing would be inadequate as a matter of law.

[28]R. 1.

[29]R. 1, 45.

[30]Id.

[31]Id., R. 25 at p. 16.

[32]R. 1 at ¶ 16.

[33]Id. at ¶ 18.

[34]DId. at ¶ 18.

Defendant filed the instant motion, seeking summary judgment in his favor as to all claims by plaintiff, on the basis that plaintiff is unable to demonstrate necessary elements of both his liberty interest deprivation and defamation claims. Additionally, defendant asserts that punitive damages are unavailable in this case because plaintiff sued the Sheriff only in his official capacity and such suits are treated as suits against the municipality and punitive damages are not available against a municipality under § 1983.

We address defendant's motion below.

**B.      Applicable Standard**

Summary judgment is appropriate when the

> pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[35]

In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party.[36] An issue of fact is "genuine" when its resolution determines the non-moving party's entitlement to relief.[37]

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of fact for trial.[38] Conclusory allegations and denials, speculation, improbable

---

[35]Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[36]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

[37]Anderson, 477 U.S. at 248.

[38]Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

7

references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial.[39]  The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings without specific factual allegations in support of these claims.[40]

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of the non-moving party's case.[41]  If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.[42]

## II.   ANALYSIS

We note at the outset that our review of plaintiff's complaint and the motion filed by the Sheriff revealed vagueness in the complaint and a failure to address the necessary consideration of qualified immunity.  For those reasons, the court ordered plaintiff to amend his complaint to specify his claims against the Sheriff in each capacity and, also, ordered the Sheriff to supplement his motion for summary judgment my addressing the issue of qualified immunity in light of plaintiff's amended complaint.[43]  Both parties have now complied with the court's instructions and, with the record

---

[39]SEC v. Recile, 10 F.3d 1093, `097 (5th Cir. 1993).

[40]Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

[41]Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885-86.

[42]Id.

[43]R. 44, 46.

8

complete for our purposes, we proceed.

### A.    Federal Constitutional Claims

Plaintiff asserts claims against the Sheriff in his individual and official capacities for violation of his due process liberty interest under the Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983. The Sheriff argues he is entitled to qualified immunity from such claims in his individual capacity and that plaintiff fails to demonstrate necessary elements of his claim against the Sheriff in his official capacity, making summary judgment appropriate as to both claims. We address these arguments below.

42 U.S.C. § 1983 allows for the imposition of liability on any person who, acting under color of state law, deprives another of rights or privileges secured by the Constitution or laws of the United States. Claims against the Sheriff in his official capacity are treated as claims against the municipal entity he represents, here, the East Baton Rouge Parish.[44] Municipalities and other local government bodies may be liable under § 1983, but only if three elements are proven:

> (1)    a constitutional violation;
> (2)    an official policy or custom; and
> (3)    a showing that the official policy or custom was the
>          operational force behind the constitutional violation.[45]

Since plaintiff's official capacity claims against the Sheriff are actually claims against East Baton Rouge Parish, plaintiff must demonstrate these three elements in order to prevail on his constitutional claims under § 1983.

---

[44]Monell v. Dept. of Social Services, 436 U.S. 658 (1978); Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388 (5th Cir. 2000); Burge v. Parish of St. Tammany, 187 F.3d 452 (5th Cir. 1999).

[45]Id.

9

We will address the elements of liberty interest claims first and then return to the elements of municipal liability.

It is well-established that a public employee's "liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises...when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'"[46] The court applies a seven-part "stigma-plus-infringement" test to determine whether or not plaintiff is entitled to relief for such claims. Plaintiff must demonstrate

(1) he was discharged;
(2) stigmatizing charges were made against him in connection with the discharge;
(3) the charges were false;
(4) he was not provided notice or an opportunity to be heard prior to discharge;
(5) the charges were made public;
(6) he requested a hearing to clear his name; and
(7) the employer denied his request.[47]

Neither party disputes that plaintiff was discharged from employment with the Sheriff's Office or that his discharge was based, in part, on allegations of sexual harassment, which we have already deemed to be defamatory per se. Accordingly, plaintiff has demonstrated the first and second elements of his liberty interest claim.

The third element of our analysis necessarily involves whether or not the fact-finder, here, the jury, is convinced that plaintiff made statements of a sexually harassing nature to Coburn and

---

[46]Board of Regents v. Roth, 408 U.S. 564 (1972); Rosenstein v. City of Dallas, 876 F.2d 392 (5th Cir. 1989); Hughes v. City of Garland, 204 F.3d 223, 225-26 (5th Cir. 2000); Bledsoe v. City of Horn Lake, Miss., 449 F.3d 650 (5th Cir. 2006).

[47]Bledsoe at 653 (citations omitted).

10

Thompson.  We will assume falsity for the purpose of this motion, but note that this is an element that plaintiff would have to prove at trial.

Neither party disputes that plaintiff requested and was denied a name clearing hearing in this case.  As cited above, plaintiff, through his attorney, made written request for a name clearing hearing on July 24, 2008.[48]  Plaintiff's request was denied by responsive letter dated July 25, 2008 sent by the Sheriff through his attorney.[49]  The Sheriff's letter stated, in part, that

> Mr. Bellard signed the employment application indicating that he understands that all employees of the Sheriff's Office are employed without a fixed term of employment and are subject to termination without cause at any time.  As I am sure you are aware, Louisiana is an at-will employment state.  Accordingly, your request for hearing is denied.[50]

Thus, plaintiff has clearly demonstrated the fourth, sixth and seventh elements of his liberty interest deprivation claim, leaving the fifth element of publication for our consideration.

Plaintiff alleges that the Sheriff publicized sexual harassment allegations against him to three (3) persons: Chief Knaps, Dennis Bellard and Chief LeDuff.[51]   Evidence before the court unequivocally demonstrates that plaintiff asked Chief Knaps to call and speak to the Sheriff after plaintiff, himself, publicized to Knaps the substance of the sexual harassment allegations.[52]  Under these facts, communication between Chief Knaps and the Sheriff does not constitute "publication" for purposes of a liberty interest claim because the communication was initiated by plaintiff.  We

---

[48]R. 21-8 at Exhibit 3.

[49]R. 21-3 at Exhibit 7.

[50]Id.

[51]R. 29 at p. 16.

[52]R. 21-3 at 86:4-91:22; R. 21-5 at Exhibit E.

11

reach the same conclusion with respect to Dennis Bellard, who contacted the Sheriff after learning of the sexual harassment allegations from plaintiff himself.[53]   Plaintiff's publication of the allegations against him to his father, Dennis Bellard, and Chief Knaps results in the failure of his liberty interest claim with respect to the communications between these parties and the Sheriff.[54] The facts are not as clear as to the alleged communication between the Sheriff and Chief LeDuff.

Plaintiff's testimony clearly alleges that he contacted LeDuff and that LeDuff told him during that conversation that he was already aware of plaintiff's termination and the reasons therefor and that he learned this information from the Sheriff.[55]  Conversely, Chief LeDuff's affidavit states that he "attempted to contact [the Sheriff] to discuss Shane Bellard's separation from employment...," but does not state that he did so at the request of plaintiff or his father.[56]  The affidavit further states that LeDuff eventually spoke to "someone...presumed to be an employee of the East Baton Rouge Parish Sheriff's Office..."[57]  Despite the ambiguity as between plaintiff's version of the events and that attested to by Chief LeDuff, LeDuff's affidavit makes it plain that he initiated the contact with the Sheriff's office.  The Sheriff denies speaking, personally, about plaintiff's termination to anyone outside his department, other than Chief Knaps and Dennis Bellard.[58]

Reviewing this evidence, we find that plaintiff's assertion that LeDuff spoke to the Sheriff

---

[53]Id.

[54]Campos v. Guillot, 743 F.2d 1123 (5th Cir. 1984) (Police chief not entitled to name clearing hearing because his own actions caused the publication of the charges against him).

[55]R. 21-8 at 48:16-49:1.

[56]R. 40-1.

[57]Id.

[58]R. 21-3 at 86:4-12.

12

directly about plaintiff's termination constitutes hearsay, as it is a statement, other than one made by the declarant while testifying at a trial or hearing, offered to prove the truth of the matter asserted.[59] Hearsay evidence is inadmissible unless it conforms to one of the enumerated hearsay exceptions.[60] Neither party addresses this evidentiary issue and, accordingly, plaintiff does not argue that this evidence is admissible under one or more hearsay exceptions. It is axiomatic that hearsay evidence does not satisfy plaintiff's burden of proof in this summary judgment proceeding, as evidence offered must be "competent," meaning that plaintiff must offer evidence that would be admissible at trial.[61] The court is aware that plaintiff would be permitted to testify as to his recollection of what the LeDuff said for the purpose of impeachment if LeDuff testified contrary to plaintiff's recollection. Impeachment testimony, however, is not probative as to the fact sought to be established by the testimony and under these circumstances the only possible basis for admitting plaintiff's testimony would be for the purpose of impeachment.[62]

Given our finding of hearsay as to plaintiff's proffered evidence, the court also finds that no genuine issue of fact exists as to plaintiff's claim against the Sheriff in his official capacity.[63] Although LeDuff's affidavit is competent summary judgment evidence that he spoke with someone

---

[59]Fed. R. Evid. 801.

[60]Fed. R. Evid. 802, 803.

[61]Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547 (5th Cir. 1987); Resolution Trust Corp. v. Starkey, 41 F.3d 1018 (5th Cir. 1995); Grimes v. Texas Dep't. of Mental Health & Mental Retardation, 102 F.3d 137 (5th Cir. 1996).

[62]U.S. v. Glassman, 562 F.2d 954 (5th Cir. 1977); U.S. v. Benton, 637 F.2d 1052 (5th Cir. 1981); U.S. v. Livingston, 816 F.2d 184 (5th Cir. 1987);

[63]Broadway v. City of Montgomery, Alabama, 530 F.2d 657 (5th Cir. 1976); Williams v. Collins, 728 F.2d 721 (5th Cir. 1984) (internal citations omitted).

in the East Baton Rouge Sheriff's Office about plaintiff's termination, it does not suffice for purposes of plaintiff's federal constitutional claim. Supervisory officials are not liable for actions of subordinates simply because the alleged tortfeasor is employed by the official in question.[64] Thus, assuming for the sake of this motion, that plaintiff can demonstrate that an employee of the Sheriff's Office publicized information concerning his termination to LeDuff, such proof would still not impute liability to the Sheriff under § 1983.

Turning to plaintiff's individual capacity claims, we reach a similar conclusion. Plaintiff's proffered hearsay evidence is insufficient to demonstrate the existence of a genuine issue of material fact regarding whether or not the Sheriff publicized defamatory statements about plaintiff to LeDuff. Accordingly, we find that summary judgment is appropriate as to plaintiff's official and individual capacity federal liberty interest claims under 42 U.S.C. § 1983 and the Sheriff's motion for summary judgment should be granted as to those claims.

### D.   State Constitutional Claims

In addition to the federal constitutional claim discussed above, plaintiff asserts a claim against defendant in his official and individual capacities for violation of his due process liberty interest under Article I, Section 2 of the Constitution of the State of Louisiana. Whether in the context of Louisiana or federal constitutional law, our due process analysis is the same, as these provisions offer identical protections.[65] A difference arises, however, with respect to vicarious liability which, while inapplicable to federal claims under § 1983, is applicable to Louisiana law

---

[64]Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987); Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002); Roberts v. City of Shreveport, 397 F.3d 287 (5th Cir. 2005).

[65]Progressive Sec. Ins. Co. v. Foster, 711 So.2d 675, 688 (La. 1998).

claims.[66]

Louisiana law is clear that a Sheriff may be held liable in his official capacity only for the tortious conduct of his deputy.[67] Accordingly, assuming for the purpose of this motion that LeDuff's affidavit demonstrates that an employee of the East Baton Rouge Parish Sheriff's Office publicized defamatory information about plaintiff to LeDuff, plaintiff may only hope to recover against the Sheriff in his official capacity as to his state liberty interest claim. As discussed above, we find plaintiff's proffered hearsay evidence of publication of defamatory statements by the Sheriff directly to LeDuff insufficient to create a genuine issue of material fact as to claims against the Sheriff in his individual capacity. Given these findings, the court concludes that plaintiff's state constitutional claim against the Sheriff in his individual capacity should be dismissed. The Sheriff's motion for summary judgment will be granted as to that claim.

Construing the evidence in the light most favorable to the non-moving party, as we are required to do in these proceedings, we find that a genuine issue of material fact exists as to the element of publication by a yet unnamed employee of the Sheriff's Office to LeDuff, as attested to in LeDuff's affidavit. Accordingly, summary judgment is inappropriate and the Sheriff's motion for summary judgment will be denied as to plaintiff's Louisiana constitutional law claim against the Sheriff in his official capacity.

Louisiana courts analyze qualified immunity defenses to state constitutional law claims using

---

[66]Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La. 1981).

[67]Id.

the same factors as are applicable to state officers under Section 1983.[68]   Qualified immunity doctrine

> shields government officials from civil damages liability
>
> 'insofar as their conduct does not violate clearly established
>
> statutory or constitutional rights of which a reasonable person
>
> would have known.'[69]

Thus, plaintiff must show two things: (1) that his constitutional right was violated, and (2) that the violation was objectively unreasonable.[70]   The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[71] Qualified immunity is not available as a defense to official capacity suits and, accordingly, plaintiff's official capacity claim under the Louisiana constitution survives.[72]

## A.   State Law Defamation Claims

The Sheriff asserts that plaintiff's Louisiana law claims for defamation should be dismissed because plaintiff is unable to demonstrate all of the required elements thereof.

Defamation is an intentional tort involving invasion of a person's interest in reputation and

---

[68]Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005) (quoting Moresi v. Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1093 (La. 1990)).

[69]Pasco v. Knoblauch, 566 F.3d 572, 578 (5th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

[70]Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir. 1993).

[71]Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[72]Kentucky v. Graham, 473 U.S. 159 (1985); Hafer v. Melo, 502 U.S. 21 (1991); Harvey v. Blake, 913 F.2d 226 (5th Cir. 1990).

16

good name.[73]  To establish a claim for defamation under Louisiana law, plaintiff must demonstrate the following elements:

> (1)     a false and defamatory statement by defendant;
> (2)     an unprivileged publication to a third party;
> (3)     fault (negligence or greater) on the part of the publisher; and
> (4)     resulting injury.[74]

Failure to demonstrate even one (1) of these required elements is fatal to the claim.[75] Defamatory words are those which harm the reputation of another in that they "lower him in the estimation of the community or...deter others from associating with him."[76]  Statements may be either susceptible of a defamatory meaning, or defamatory per se.[77]  When the words at issue allege criminal behavior by another or "subject him to public ridicule, ignominy, or disgrace, and are susceptible of but one meaning," Louisiana law deems them defamatory per se.[78]  Thus, the threshold issue is wether the statements at issue are defamatory, either by interpretation, or per se.[79]  When the

---

[73]Costello v. Hardy, 864 So.2d 129 (La. 2004) (internal citations omitted).

[74]Id. at 139 (citing Trentacosta v. Beck, 703 So.2d 552, 559 (La. 1997) and RESTATEMENT (SECOND) OF TORTS § 558 (1977)).

[75]Id. at 140 (citing Douglas v. Thomas, 728 So.2d 560, 562 (La. App. 2 Cir. 1999) writ denied 741 So.2d 661 (La. 1999); Kosmitis v. Bailey, 685 So.2d 1177, 1180 (La. App. 2 Cir. 1996)).

[76]Elmer v. Coplin, 485 So. 2d 171, 177 (La. App. 2 Cir. 1986), writ denied 489 So.2d 246 (La. 1986).

[77]Id. (citing Madison v. Bolton, 102 So.2d 433 (La. 1958).

[78]Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La. 1980); Id.

[79]Id. at 175-76 (citing Fleming v. Michot, 295 So.2d 821 (La. App. 2 Cir. 1974), writ denied 299 So.2d 802 (La. 1974); Brown v. News-World Publishing Corp., 245 So.2d 430 (La. App. 2 Cir. 1971)).

statement is deemed defamatory per se, the additional elements of falsity and malice are presumed, shifting the burden of proof to defendant to rebut these presumptions.[80]

Several defenses exist as to a claim of defamation. Proof of truth of the defamatory statement is an absolute defense.[81] The burden of proving the truth of the statement lies with the defendant.[82]

Justification or privilege is another defense arising from the public policy encouraging free communication of views in certain instances.[83] Privileged communications fall into one of two categories: (1) absolute or unqualified; and (2) conditional or qualified.[84] Absolutely privileged communications are, for example, statements by judges or legislators in their official capacities.[85] Conditionally privileged communications must possess the following elements:

    (1)    they must be made in good faith;

    (2)    they must be made on a subject matter in which the person communicating has an interest or in reference to which he has a duty; and

    (3)    they must be made to a person having a corresponding interest or duty.[86]

The Sheriff asserts that plaintiff is unable to demonstrate that the Sheriff communicated a

---

[80]Id. at 176 (citing Martin v. Markley, 11 So.2d 593 (La. 1942).

[81]Trahan v. Ritterman, 368 So.2d 181, 184 (La. App. 1 Cir. 1979) (citing Deshotel v. Thistlethwaite, 121 So.2d 222 (1960)).

[82]Id. (citing Rosen v. Reed, 351 So.2d 1284 (La. App. 1 Cir. 1977); Parsons v. Gulf & South American Steamship Co., 194 So.2d 456 (La. App. 4 Cir. 1967)).

[83]Kennedy v. Sheriff of East Baton Rouge, 935 So.2d 669 (La. 2006).

[84]Elmer at 176 (internal citations omitted).

[85]Id.

[86]Trentacosta v. Beck, 703 So.2d 552 (La. 1997); Toomer v. Breaux, 146 So.2d 723 (La. App. 3 Cir. 1962)

false and defamatory statement about plaintiff to any third party. The Sheriff argues that allegations of sexual harassment against plaintiff were based on written statements by the alleged victims and, thus, are not false.[87] The Sheriff also argues that, even if a fact finder were to reject plaintiff's statements to Coburn and Thompson as rising to the level of sexual harassment, plaintiff is still unable to demonstrate that the Sheriff communicated any these allegations to third parties or that such communication was undertaken negligently or with malice or, finally, that he has suffered any damage as a result.[88]

As instructed by applicable jurisprudence, we begin with the issue of whether or not the communication is defamatory, either by interpretation or per se. Plaintiff alleges that the Sheriff communicated to Chief LeDuff, Chief Knaps and Dennis Bellard that plaintiff had been fired from the EBRSO because he sexually harassed co-workers and, in one instance, an Earl K. Long employee, and was both disruptive and vulgar in class.[89] We find that these statements are the kind of statements that, if made, constitute defamatory speech per se in that, by their very nature, they cause injury to plaintiff's personal and professional reputation and inspire low public opinion of him.[90] Thus, we presume proof of both falsity and malice and the burden falls to the defendant to rebut these presumptions. First, however, we look to the other required elements of communication and injury.

---

[87]R. 20-1 at p. 11.

[88]Id.

[89]Deposition of Bellard [R. 21-8 at 43:22-49:1.

[90]Howard v. Town of Jonesville, 935 F. Supp. 855 at n. 4 (W.D. La. 1996); Steed v. St. Paul's United Methodist Church, 728 So.2d 931, 940-41 (La. App. 2 Cir. 1999).

Plaintiff asserts that the Sheriff made defamatory statements to three (3) specified persons. We will address each of these alleged communications separately. First, plaintiff claims that the Sheriff communicated the details of his termination and the sexual harassment allegations against him to Mike Knaps. Plaintiff admits that he called Knaps and informed him of some of the allegations against him and that he had been terminated. Plaintiff admits asking Knaps to talk with the Sheriff on his behalf. Knaps testified that he did speak to the Sheriff on plaintiff's behalf concerning the possibility of letting plaintiff resign, rather than be fired.

Similarly, plaintiff shared the details of his termination with his father, Dennis Bellard. Dennis, a former Baton Rouge Police Officer, contacted both Knaps and the Sheriff in an effort to aid his son in regaining his position as a Deputy Sheriff. Plaintiff alleges that the Sheriff communicated, not only the allegations against him that he had already shared with his father, but also additional sexual harassment allegations, which the Sheriff later retracted based on lack of substantiating evidence.[91] Plaintiff denies that he had previously discussed an additional sexual harassment allegation, which involved an extra-duty detail at Earl K. Long Hospital, with anyone because he was unaware of it until the Sheriff shared that information with his father.

Plaintiff also testified that he spoke with Chief LeDuff and that LeDuff informed him that he had already been made aware of plaintiff's termination and the reasons therefor by the Sheriff himself.[92] The Sheriff offers the affidavit of Chief LeDuff, wherein he denies that he ever discussed the matter with the Sheriff directly, but acknowledges that he did speak with someone who he

---

[91]Deposition of Dennis Bellard [R. 21-5] at 39:9 - 40:19; Deposition of Gautreaux [R. 21-3] at 100:13 - 22. Specifically, the Sheriff testified that "...as it turned out, it wasn't – that wasn't true..." [R. 21-3 at 101:12-13].

[92]Deposition of Bellard [R. 21-8] at 48:16-49:1.

"presumed to be an employee of the East Baton Rouge Sheriff's Office."[93]

Recordings of telephone conversations between Dennis Bellard and Knaps and the Sheriff demonstrate that the Sheriff communicated the defamatory allegations to both Knaps and Dennis Bellard, though it is also apparent that both Dennis Bellard and Knaps contacted the Sheriff for the express purpose of discussing these matters and had prior knowledge of them from plaintiff himself.[94]  These contacts were initiated by plaintiff's own actions and, accordingly, plaintiff may not make out a defamation claim based on these self-induced communications.[95]

As discussed above, we find that plaintiff's proffered deposition testimony alleging that LeDuff told him that he learned of plaintiff's termination from the Sheriff himself constitutes inadmissible hearsay and, accordingly, does not create a genuine issue of material fact as to this alleged publication by the Sheriff.  We also find, however, that LeDuff's own affidavit creates a genuine issue of material fact concerning publication of the defamatory statements about plaintiff by one of the Sheriff's employees who is yet unnamed.  Louisiana law allows for the imposition of liability upon an official for the acts of his subordinates under the theory of respondeat superior, but only in his official capacity.[96]  Accordingly, we conclude that plaintiff's individual capacity defamation claim against the Sheriff should be dismissed for want of evidence, but plaintiff's official capacity defamation claim against the Sheriff survives based on our finding that the record contains

---

[93]R. 40-1.

[94]R. 21-3 at 86:4-91:22; R. 21-5 at Exhibit E.

[95]Rosenstein v. City of Dallas, Texas, 876 F.2d 392, 396 (5th Cir. 1989) (citing Campos v. Guillot, 743 F.2d 1123 (5th Cir. 1984).

[96]Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La. 1981).

21

evidence that a Sheriff's Office employee publicized defamatory statements about plaintiff.

The Sheriff asserts that, even if plaintiff is able to demonstrate publication of defamatory statements in this case, he is unable to prove requisite damages.  Plaintiff admits that he did not apply for employment under Chief LeDuff or at any other law enforcement branch.[97]  Plaintiff argues that, as expressed by Chief Knaps, he has virtually no hope of being hired in the field of law enforcement with this termination for sexual harassment on his record.[98]  Plaintiff also argues that his reputation was impugned and that he has suffered emotionally as a result.[99]  Under these facts, we conclude that a reasonable fact-finder could make an award of damages as to plaintiff's defamation claim.

Finding that plaintiff has successfully demonstrated genuine issues of material fact with respect to both communication and injury, we now return to defendant's burden of proof imposed by virtue of our finding that the statements at issue were defamatory per se.  Plaintiff does not deny that he made the statements which prompted cadets Coburn and Thompson to file their written statements against him.[100]  Rather, plaintiff argues that the statements were not intended to be sexual in nature or to harass or threaten his audience.[101]  Thus, the court is presented with a situation in which the truth or falsity of the sexual harassment allegation depends upon the fact-finder's impression of the statements in the context of the case as a whole.  The Sheriff points to the written

---

[97]R. 21-8 at 46:19-22.

[98]Id. at 47:1-3; R. 21-4 at 14:9-14.

[99]R. 21-8 at 47:20-48:15; 50:18-52:1.

[100]Id. at 24:2-17.

[101]Id. at 24:2-27:7.

statements by Coburn and Thompson as evidence that the allegations against plaintiff are true, while plaintiff vigorously argues that he meant no such inference by his words. The Sheriff has failed to rebut the presumptions raised by our finding that the statements at issue were defamatory per se and, therefore, is not entitled to summary judgment on the basis of the defense of truth. Whether Coburn and Thompson's statements are true necessarily involves a credibility determination which lies within the discretion of the jury in this case. Accordingly, the Sheriff is not entitled to summary judgment by operation of the defense of truth as to plaintiff's official capacity defamation claim.

Similarly, the Sheriff has not demonstrated applicability of the defense of privilege as to the alleged publication by a Sheriff's Office employee to LeDuff in this case. We therefore decline to grant summary judgment on this basis.

### E.    Punitive Damages Under Section 1983

The Sheriff's motion asserts that plaintiff is unable to demonstrate that any conduct at issue in this case, if proven, was the product of evil motive or deliberate indifference, such as would entitle plaintiff to an award of punitive damages in this case. The court agrees.

While punitive damages are available against the Sheriff in his individual capacity, it is clear that such damages are not available as against the Sheriff in his official capacity, as official capacity suits are generally understood to be another means of suing the government entity or agency the officer represents.[102] Jurisprudence clearly establishes that municipalities, such as the Parish of East Baton Rouge for which the Sheriff stands, are immune from punitive damage judgments.[103]

---

[102]Monell v. Department of Soc. Serv., 436 U.S. 658 (1978).

[103]City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Webster v. City of Houston, 689 F.2d 1220 (5th Cir. 1982).

23

Based on our findings above that all claims by plaintiff against the Sheriff in his individual capacity should be dismissed, we conclude that plaintiff's claims for punitive damages under 42 U.S.C. § 1983 should also be dismissed. The Sheriff's motion for summary judgment will be granted as to that claim.

### F.  Reinstatement, Lost Pay and Benefits Claims

Plaintiff's complaint seeks "reinstatement to the position which he held prior to his termination."[104] Alternatively, plaintiff requests "compensation for front pay and all fringe benefits of his previous employment."[105] Such relief is unavailable to plaintiff in this court. Plaintiff, as an at-will employee, has no property interest in his former employment. As explained by applicable jurisprudence, plaintiff's liberty interest does not involve the right to reinstatement or to otherwise alter the employment decision already made.[106] On the contrary, it merely entitles plaintiff, under specific circumstances, to a name clearing hearing.[107] Accordingly, to the extent that plaintiff asserts a claim for reinstatement as a Deputy Sheriff in the East Baton Rouge Sheriff's Office or any pay or benefits commensurate with such employment, such claims will be dismissed with prejudice.

The court notes that plaintiff's surviving claims are based entirely on the fact question surrounding any alleged communication between a Sherrif's Office employee and LeDuff, as described in LeDuff's own affidavit. We further note that LeDuff's affidavit does not specify what

---

[104]R. 1 at ¶ 18.

[105]Id.

[106]Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 n. 12 (1972)).

[107]Id.

prompted him to contact the Sheriff's office to inquire about plaintiff's termination, but it is evident that LeDuff had knowledge of plaintiff's termination prior to that call. Accordingly, a narrow fact issue will be determinative of plaintiff's remaining claims and the court expects that, at trial, LeDuff will be examined and cross-examined thoroughly to fill in the missing details necessary for a determination of whether or not the necessary element of publication has been demonstrated.

## III.   CONCLUSION

Based on our reasoning above, it is the finding of this court that defendant's motion for summary judgment should be GRANTED as to plaintiff's individual and official capacity federal constitutional claims against the Sheriff. We further find that defendant's motion for summary judgment should be GRANTED as to plaintiff's individual capacity state constitutional claim against the Sheriff, but DENIED as to plaintiff's official capacity state constitutional law claim against the Sheriff. We also find that defendant's motion for summary judgment should be GRANTED as to plaintiff's individual capacity state law defamation claim against the Sheriff, but DENIED as to plaintiff's official capacity state law defamation claim against the Sheriff. We also find that plaintiff's claim for punitive damages under 42 U.S.C. § 1983 should be dismissed and, accordingly, defendant's motion for summary judgment should be GRANTED in that respect. Finally, we find that defendant's motion for summary judgment should be GRANTED as to plaintiff's claims for reinstatement, lost pay and benefits and that such claims should be dismissed.

The court further finds that our ruling herein is necessarily determinative of the remainder of plaintiff's claims and, there being no just reason for delay, will direct entry of final judgment pursuant to Fed. R. Civ. P. 54(b).

The court will issue a judgment in conformity with these findings.

25

September 3  , 2010
Alexandria, Louisiana

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT COURT